IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

_____

GREGORY STARNES,

                Plaintiff,

                                        Civ. Action No.
  vs.                                9:07-CV-484 (FJS/DEP)

S. RAMINIENI, *et al.*,

                Defendants.

_____

APPEARANCES:                    OF COUNSEL:

FOR PLAINTIFF:

GREGORY STARNES, *pro se*
06-R-3966
Wallkill Correctional Facility
Box G
Wallkill, NY 12589

FOR DEFENDANTS:

HON. ANDREW M. CUOMO        TIMOTHY P. MULVEY, ESQ.
Attorney General of              Assistant Attorney General
the State of New York
615 Erie Blvd., Suite 102
Syracuse, NY 12224

DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE

REPORT AND RECOMMENDATION

    Plaintiff Gregory Starnes, a New York State prison inmate who is

proceeding *pro se* and *in forma pauperis*, has commenced this action pursuant to 42 U.S.C. § 1983 alleging deprivation of his civil rights. In his complaint, Starnes contends that although diagnosed by prison medical personnel in 2003 as suffering from Hepatitis C, he was neither informed of that diagnosis at the time nor treated for his illness, and alleges that defendants were thereby deliberately indifferent to his serious medical needs, in violation of the Eighth Amendment. As relief, plaintiff's complaint seeks damages in the amount of $1,000,000.

Currently pending before the court is defendants' motion for summary judgment dismissing plaintiff's complaint. Defendants' motion is based upon their assertion that Starnes is precluded from bringing this action in light of his admitted failure to file a grievance addressing the matters now raised.[1]

Having carefully reviewed defendants' motion and plaintiff's opposition, I find the existence of triable issues of fact surrounding the question of whether there were administrative remedies available to

---

[1] In their motion, defendants also seek dismissal of plaintiff's claims against defendant Jane Doe, based upon Starnes' failure to identify, substitute, and serve that defendant under her true name. In light of that failure, plaintiff's claims against defendant Jane Doe are subject to dismissal on this independent basis. *See Cushmano v. Sobek,* 604 F. Supp.2d 416, 502 (N.D.N.Y. 2009); *Littman v. Sankowski*, No. 9:05-CV-1104, 2008 WL 420011, at *7 (N.D.N.Y. Feb. 11, 2008) (Kahn, D.J., Lowe, M.J.).

plaintiff at the relevant times, and therefore recommend against entry of summary judgment.

I.      BACKGROUND[2]

The facts associated with plaintiff's claims are not particularly complex. Plaintiff is a prison inmate entrusted to the care and custody of the New York State Department of Correctional Services ("DOCS"); at the times relevant to his claims in this action, Starnes was designated to the Mid-State Correctional Facility ("Mid-State"), located in Marcy, New York. *See generally* Complaint (Dkt. No. 1).

In or about March of 2003 defendant Clinch, a registered nurse ("RN") at Mid-State, ordered a blood test for the purpose of determining whether plaintiff suffered from Hepatitis C. Complaint (Dkt. No. 1) § 6; *see also* Starnes Aff. (Dkt. No. 24) Exh. (unnumbered) p. 14. While the blood test confirmed that Starnes had tested positive for the disease, he was not told of the test result by defendant Clinch or Dr. Raminieni, a physician employed at Mid-State and a named defendant in this action,

---

[2]     In light of the procedural posture of the case the following recitation is derived from the record now before the court, with all inferences drawn, and ambiguities resolved, in favor of the plaintiff. *See Wells-Williams v. Kingsboro Psychiatric Ctr.*, No. 03-CV-134, 2007 WL 1011545, at *2 (E.D.N.Y. Mar. 30, 2007) (citations omitted).

and received no treatment at Mid-State for the affliction.[3]  *Id.*  According to Starnes, it was not until three years later that he was informed by a prison physician at Groveland Correctional Facility that he had Hepatitis C and advised that a liver biopsy should have been ordered at the time of diagnosis in 2003.[4]  Complaint (Dkt. No. 1) § 6.

## II.     PROCEDURAL HISTORY

Plaintiff commenced this action on May 4, 2007, and was thereafter granted leave to proceed *in forma pauperis*.  Dkt. Nos. 1, 4.  As defendants, plaintiff's complaint names Dr. Raminieni, RN Clinch, and a Jane Doe defendant described only as RN #207.  Complaint (Dkt. No. 1) § 3.  In his complaint, plaintiff asserts a single claim of deliberate indifference to his medical needs.  *Id.* § 7.

Following joinder of issue and the close of discovery, on September 29, 2008 defendants Raminieni and Clinch moved for summary judgment

---

[3]     Plaintiff's medical records reflect that on two separate occasions he failed to appear for appointments with Dr. Raminieni during the latter part of April of 2003.  *See* Starnes Aff. (Dkt. No. 24) Exh. (unnumbered) at pp. 17-18.  Responding to the intimation that his failure to learn of the diagnosis could have resulted from the missed appointments, Starnes notes that he was in the prison medical facility on April 21, 2003, one of the two alleged no-show dates, on another matter and therefore would have been available for consultation with Dr. Raminieni or a nurse.  Starnes Aff. (Dkt. No. 24) ¶ 6.

[4]     Plaintiff cites an entry in his medical records made by a prison physician at Groveland as proof that he was not informed of his illness in 2003.  *See* Starnes Aff. (Dkt. No. 24) ¶ 7.  That entry, however, actually reflects that the doctor's statement is based upon plaintiff's claim that he was never informed, without providing confirmation of that fact.  *See* Starnes Aff. (Dkt. No. 24) Exhs. (unnumbered) p. 37.

4

dismissing plaintiff's complaint for failure to exhaust available administrative remedies.  Dkt. No. 19.   Plaintiff has since responded in opposition to that motion by papers filed on February 24, 2009.  Dkt. No. 24.  Defendants' motion, which is now ripe for determination, has been referred to me for the issuance of a report and recommendation, pursuant to 28 U.S.C. § 636(b)(1)(B) and Northern District of New York Local Rule 72.3(c).  *See also* Fed. R. Civ. P. 72(b).

III.    DISCUSSION

    A.    Summary Judgment Standard

Summary judgment motions are governed by Rule 56 of the Federal Rules of Civil Procedure.  Under that provision, summary judgment is warranted when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S. Ct. 2505, 2509-10 (1986); *Security Ins. Co. of Hartford v. Old Dominion Freight Line, Inc.*, 391 F.3d 77, 82-83 (2d Cir. 2004).  A fact is "material", for purposes of this inquiry, if it "might affect the outcome of the suit under the governing law."  *Anderson*, 477 U.S. at

248, 106 S. Ct. at 2510; *see also Jeffreys v. City of New York*, 426 F.3d 549, 553 (2d Cir. 2005) (citing *Anderson*). A material fact is genuinely in dispute "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248, 106 S. Ct. at 2510.

A moving party seeking summary judgment bears an initial burden of demonstrating that there is no genuine dispute of material fact to be decided with respect to any essential element of the claim in issue; the failure to meet this burden warrants denial of the motion. *Anderson*, 477 U.S. at 250 n.4, 106 S. Ct. at 2511 n.4; *Security Ins.*, 391 F.3d at 83. In the event this initial burden is met, the opposing party must show, through affidavits or otherwise, that there is a material issue of fact for trial. Fed. R. Civ. P. 56(e); *Celotex*, 477 U.S. at 324, 106 S. Ct. at 2553; *Anderson*, 477 U.S. at 250, 106 S. Ct. at 2511. Though *pro se* plaintiffs are entitled to special latitude when defending against summary judgment motions, they must establish more than mere "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S. Ct. 1348, 1356 (1986); *but see Vital v. Interfaith Med. Ctr.*, 168 F.3d 615, 620-21 (2d Cir. 1999) (noting obligation of court to consider whether *pro se* plaintiff understood nature of summary

judgment process).

When deciding a summary judgment motion, a court must resolve any ambiguities, and draw all inferences from the facts, in a light most favorable to the nonmoving party. *Jeffreys*, 426 F.3d at 553; *Wright v. Coughlin*, 132 F.3d 133, 137-38 (2d Cir. 1998). The entry of summary judgment is warranted only in the event of a finding that no reasonable trier of fact could rule in favor of the non-moving party. *See Building Trades Employers' Educ. Ass'n v. McGowan*, 311 F.3d 501, 507-08 (2d Cir. 2002) (citation omitted); *see also Anderson,* 477 U.S. at 250, 106 S. Ct. at 2511 (summary judgment is appropriate only when "there can be but one reasonable conclusion as to the verdict").

B.  Exhaustion of Remedies

In his complaint, plaintiff confirms the availability of a grievance procedure within the relevant prison facility and acknowledges that no grievance was filed raising the issues now advanced in this action. Complaint (Dkt. No. 1) § 4. As justification for that failure plaintiff asserts simply that he "was at another facility. And it it [sic] took place three and a half years ago." *Id.* Augmenting this response with an affidavit from Karen Ballamy, Director of the DOCS Inmate Grievance Program ("IGP"), substantiating that a search of records revealed no appeals taken by the

7

plaintiff to the Central Office Review Committee ("CORC"), *see* Bellamy Aff. (Dkt. No. 19-4) ¶ 6, defendants assert that plaintiff's complaint is subject to dismissal based upon his admitted failure to exhaust available administrative remedies.

With an eye toward "reduc[ing] the quantity and improv[ing] the quality of prisoner suits[,]" *Porter v. Nussle*, 534 U.S. 516, 524, 122 S. Ct. 983, 988 (2002), Congress altered the inmate litigation landscape considerably through the enactment of the Prison Litigation Reform Act of 1996 ("PLRA"), Pub. L. No. 104-134, 110 Stat. 1321 (1996), imposing several restrictions on the ability of prisoners to maintain federal civil rights actions. An integral feature of the PLRA is a revitalized exhaustion of remedies provision which requires that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a); *see Woodford v. Ngo,* 548 U.S. 81, 84, 126 S. Ct. 2378, 2382 (2006); *Hargrove v. Riley,* No. CV-04-4587, 2007 WL 389003, at *5-6 (E.D.N.Y. Jan. 31, 2007). This limitation is intended to serve the dual purpose of affording "prison officials an opportunity to resolve disputes concerning the exercise of their responsibilities before being

haled into courtl[,]" and to improve the quality of inmate suits filed through the production of a "useful administrative record." *Jones v. Bock,* 549 U.S. 199, 204, 127 S. Ct. 910, 914-15 (2007) (citations omitted); *see Woodford,* 548 U.S. at 91-92, 126 S.Ct. at 2386; *see also Johnson v. Testman,* 380 F.3d 691, 697 (2d Cir. 2004). "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter*, 534 U.S. at 532, 122 S. Ct. at 992 (citation omitted). In the event a defendant named in such an action establishes that the inmate plaintiff failed to properly exhaust available remedies prior to commencing the action, his or her complaint is subject to dismissal. *See Pettus v. McCoy*, No. 04-CV-0471, 2006 WL 2639369, at *1 (N.D.N.Y. Sept. 13, 2006) (McAvoy, J.); *see also Woodford*, 548 U.S. at 94-95, 126 S. Ct. at 2387-88 (holding that the PLRA requires "proper exhaustion" of available remedies).

    New York prison inmates are subject to the IGP established by the DOCS and recognized as an "available" remedy for purposes of the PLRA. *See Mingues v. Nelson*, No. 96 CV 5396, 2004 WL 324898, at *4 (S.D.N.Y. Feb. 20, 2004) (citing *Mojias v. Johnson*, 351 F.3d 606 (2d Cir. 2003) and *Snider v. Melindez*, 199 F.3d 108, 112-13 (2d Cir.1999)). The

IGP consists of a three-step review process. First, a written grievance is submitted to the Inmate Grievance Review Committee ("IGRC"). 7 N.Y.C.R.R. § 701.5(a). The IGRC, which is comprised of inmates and facility employees, then issues a determination regarding the grievance. *Id.* §§ 701.4(b), 701.5(b). If an appeal is filed, the superintendent of the facility next reviews the IGRC's determination and issues a decision. *Id.* § 701.5(c). The third level of the process affords the inmate the right to appeal the superintendent's ruling to the CORC, which makes the final administrative decision. *Id.* § 701.5(d). Ordinarily, absent the finding of a basis to excuse non-compliance with this prescribed process, only upon exhaustion of these three levels of review may a prisoner seek relief pursuant to section 1983 in a federal court. *Reyes v. Punzal*, 206 F. Supp. 2d 431, 432 (W.D.N.Y. 2002) (citing, *inter alia*, *Sulton v. Greiner*, No. 00 Civ. 0727, 2000 WL 1809284, at *3 (S.D.N.Y. Dec. 11, 2000)).

Under the IGP, an inmate grievance must be filed within twenty one days of the alleged occurrence giving rise to the complaint. 7 N.Y.C.R.R. § 701.5(a); *see Tafari v. Stein*, No. 01 CV 0841, 2008 WL 1991039, at *4-5 (W.D.N.Y. May 5, 2008)(Scott, M.J.). The IGP further provides that exceptions to this timeliness requirement may be made in "mitigating circumstances"; providing, however, that such exceptions may not be

granted if requested more than forty-five days after an alleged occurrence. 7 N.Y.C.R.R. § 701.6(g)(1)(i)(a); *see Tafari*, 2008 WL 1991039, at *5.

    In this instance plaintiff contends that he was unaware of any basis for filing a grievance regarding the diagnosis and failure to treat his Hepatitis C until long after the time for filing a grievance addressing that failure had expired. That assertion, if credited by the trier of fact, could suffice to establish that the administrative remedies upon which defendants' motion is predicated were not available to plaintiff due to his failure to discover the basis for filing a grievance within the time period allotted under the IGP. *See Borges v. Piatkowski*, 337 F. Supp.2d 424, 426 (W.D.N.Y. 2004) (grievance process deemed unavailable to plaintiff who did not discover the existence of a foreign object left in his mouth by a dentist for more than two years after receiving the treatment). In the event of a finding that, in light of the circumstances presented, administrative remedies are no longer available to plaintiff, then the PLRA's exhaustion requirement does not stand as an impediment to his filing and proceeding with this action. *Giano v. Goord,* 380 F.3d 670, 680 (2d Cir. 2004). And, since determination of this issue hinges upon when plaintiff discovered the diagnosis of his Hepatitis C and the failure of prison officials to treat that condition, summary judgment is precluded by

the existence of this material issue of fact.

IV.  SUMMARY AND RECOMMENDATION

Application of the PLRA's exhaustion of remedies requirement in this case depends upon whether administrative remedies were available to plaintiff at the times relevant to his complaint, a determination turning upon when plaintiff discovered his diagnosis and became aware of defendants' failure to treat his condition.  The existence of this triable issue of material fact precludes entry of summary judgment, as sought by defendants.  Accordingly, it is hereby respectfully

RECOMMENDED, that defendants' motion for summary judgment (Dkt. No. 19) be GRANTED, in part, and that plaintiff's claims against defendant Jane Doe be DISMISSED, without prejudice, but that the motion otherwise be DENIED in all respects.

NOTICE: Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court within TEN days of service of this report.  FAILURE TO SO OBJECT TO THIS REPORT WILL PRECLUDE APPELLATE REVIEW.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P.  6(a), 6(d), 72; *Roldan v. Racette,* 984 F.2d 85 (2d Cir. 1993).

It is hereby ORDERED that the clerk of the court serve a copy of

this Report and Recommendation upon the parties in accordance with this court's local rules.

_____
David E. Peebles
U.S. Magistrate Judge

Dated:   June 11, 2009
         Syracuse, NY

this Report and Recommendation upon the parties in accordance with this court's local rules.

_____
David E. Peebles
U.S. Magistrate Judge

Dated:   June 11, 2009
         Syracuse, NY